UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH BERG, as trustee for the bankruptcy estate of John Wiesner, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NEXUS RISK MANAGEMENT INC., NEXUS RISK MANAGEMENT LP., CI INVESTMENTS INC., and CHARLES GILBERT, | ) ) ) ) ) | 15 C 11534 |
| Defendants. | ) ) ) | |
| CI INVESTMENTS, INC., | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| CHARLES GILBERT, NEXUS RISK MANAGEMENT INC., and NEXUS RISK MANAGEMENT LP., | ) ) ) ) | |
| Third Party Defendants. | ) ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion of Defendant and Third Party Plaintiff, CI Investments Inc. ("CI") for leave to file a crossclaim against Defendants and Third Party Defendants, Charles Gilbert ("Gilbert"), Nexus Risk

Management Inc., and Nexus Risk Management LP (collectively, "Nexus Defendants"). Dkt. 58. For the following reasons, the motion is granted.

## BACKGROUND

On July 28, 2014, John Wiesner ("Wiesner") filed a "voluntary petition for relief under chapter 7 of the Bankruptcy Code." Dkt. 75-1, Ex. 2, ¶ 1. Plaintiff, Elizabeth Berg ("Berg") "was appointed as successor chapter 7 trustee of the Estate of John Wiesner on November 7, 2014." *Id*., ¶ 8. Subsequently, Berg "not personally but solely as the chapter 7 trustee" of Wiesner's estate ("Estate") filed a Second Amended Complaint against the Nexus Defendants and CI. Dkt. 69, p. 1. CI attached the Second Amended Complaint[1] to its Reply In Support Of Its Motion To File A Cross Claim. Dkt. 75-1, Ex. 2. Berg alleges in the Second Amended Complaint that "[f]rom 2010 until 2013, [Wiesner] was a contractor working as a Risk Management Strategist for the Chicago Board Options Exchange ('CBOE')." Dkt. 75-1, Ex. 2, ¶ 31. While employed by the CBOE, Wiesner supposedly developed intellectual property including "software, code, formula, and other elements utilized in trading strategies." *Id*., ¶ 32. Specifically, Berg claims that Wiesner "developed Realized Historical VIX, Static Volatility Surfaces, Static Delta Gamma, Weez-a-tron and skewed volatility parameters in a modified Black-Scholes formula; a formula he had

---

[1] Berg and the Nexus Defendants' Response references the "First Amended Complaint," but CI's Motion For Leave To File Cross-Claim and its Reply In Support Of Its Motion To File A Cross Claim reference a "Second Amended Complaint." According to the docket, an Answer was filed in response to the Second Amended Complaint. Moreover, Exhibit 2 of CI's Reply in Support Of Its Motion To File A Cross Claim appears to be the Second Amended Complaint. Thus, the Court assumes the operative complaint is the Second Amended Complaint.

originally written in 2002." *Id.*, ¶ 32. Berg also alleges that "[t]he Static Volatility Surfaces and skewed volatility parameters in a modified Black-Scholes formula are trade secrets" that belong to Wiesner "and have only ever been used with the understanding that they would stay a secret and not be made available to the public." *Id.*, ¶ 34.

Between 2010 and 2013, Wiesner also allegedly produced a trading strategy using the intellectual property that he had already created. *Id.*, ¶ 35. Subsequently, Wiesner "created software to implement [that] trading strategy." *Id.*, ¶ 36. This required Wiesner to code his trading strategy into an Excel Spreadsheet, known as "The Giant Spreadsheet." *Id.*, ¶ 37. Wiesner later used The Giant Spreadsheet, and other intellectual property he had previously created, to make the Validation Tool and the Live Trading Sheet. *Id.*, ¶ 40. According to the Second Amended Complaint, Berg has had "copyrights granted for The Giant Spread Sheet [ ], Static Delta Gamma [ ], Weez-a-tron [ ], and Realized Historical VIX [ ], and [she] owns the rights and title to the copyright in the software code, spreadsheets, and other intellectual property." *Id.*, ¶ 41. The Estate purportedly owns Wiesner's intellectual property and Berg "is the real party in interest to pursue claims and causes of action" that relate to Wiesner's intellectual property. *Id.*, ¶ 19.

Nexus Risk Management Inc. is a Canadian corporation "engaged in developing software for companies to use for hedging variable annuities." *Id.*, ¶¶ 21, 22. Nexus Risk Management Inc. is the parent company of Nexus Risk

3

Management LP, an Illinois limited partnership with its principal place of business in Chicago. *Id*., ¶¶ 23–24. Gilbert is a Canadian citizen, and he is the president and majority owner of Nexus Risk Management Inc. *Id*., ¶ 29. CI is a Canadian corporation that operates as a mutual fund company. *Id*., ¶¶ 26–27.

In 2009, "CI contracted with Nexus Risk Management Inc. to develop a new trading strategy for its new G5|20 mutual fund." *Id*., ¶ 42. However, according to the Second Amended Complaint, Gilbert and Nexus Risk Management Inc. were unable to provide CI with "a satisfactory and effective trading strategy" between 2009 and 2010. *Id*., ¶ 46. Consequently in 2010, Gilbert contacted Wiesner to create a trading strategy for CI. *Id*., ¶ 47. Wiesner allegedly created "a trading strategy for CI," which incorporated intellectual property that he had previously developed. *Id*., ¶ 48. "For the creation of a trading strategy and the continued use of his intellectual property," Berg claims that Wiesner "was promised twenty percent [ ] ownership of the Nexus parent company, Nexus Risk Management Inc., and a base salary when the fund started generating revenue." *Id*., ¶ 49.

Over time, Wiesner's involvement with the Nexus Defendants and CI supposedly changed from merely creating the trading strategy to also implementing the strategy into usable software. *Id*., ¶ 52. According to Berg, this required Wiesner to use The Giant Spreadsheet, which was copyrighted and contained his trading strategy. *Id*., ¶¶ 41, 53. During the time that Wiesner was working as a contractor for CI, he also maintained his contract position with the CBOE. *Id*., ¶¶ 51, 58. However,

in June of 2013, "CI required [Wiesner] to quit as a contractor with the CBOE" and work full time for the Nexus Defendants because once the fund went live, Wiesner "would be directing trades to the CBOE floor," which could have caused a potential conflict of interest. *Id*., ¶ 58.

On October 1, 2013, CI's G5|20 fund went live. *Id*., ¶ 61. During the three years prior to launching CI's G5|20 fund, Wiesner's strategy was apparently "developed, improved upon, and modified." *Id*., ¶ 60. Wiesner was terminated on November 12, 2013 and never received the twenty percent ownership in Nexus Risk Management Inc. that he was allegedly promised. *Id*., ¶¶ 62–63.

After CI's G5|20 fund went live, on January 27, 2014, CI and Nexus Risk Management, Inc. "entered into an amended and restated software license agreement, under which CI made a $1,750,000.00 equity investment in Nexus Risk Management Inc. and $500,000.00 loan to the Nexus entities in exchange for a Canadian exclusive license to use," what Berg claims is Weisner's intellectual property. *Id*., ¶ 66. However, shortly thereafter, "[o]n November 14, 2014, CI terminated its relationship with the Nexus" Defendants. *Id*., ¶ 68. The Asset Purchase Agreement, attached as Exhibit A to Berg's and the Nexus Defendants' Response And Objection To Motion For Leave, contains the terms of the termination. *See* Dkt. 73, Ex. A. Pursuant to the Asset Purchase Agreement, Nexus Risk Management Inc. agreed to transfer ownership of the Nexus Risk Platform to CI. *Id*., p. 2. The Nexus Risk Platform includes "all right, title and interest in and to . . . [Nexus Risk Management Inc.'s]

5

software platform . . . which comprises an integrated suite of modules and utilities that enable companies to execute asset liability management and dynamic hedging strategies." *Id*., p. 3. According to Berg's allegations, it appears that the Nexus Risk Platform uses the software programs that Wiesner developed and implemented, or some type of derivative work of Wiesner's intellectual property. *See* Dkt. 75-1, Ex. 2, ¶ 69 ("As part of the termination of the relationship with CI, the Nexus companies and Charles Gilbert transferred [Wiesner's] intellectual property, including the Validation Tool, the Live Trading Sheet, and The Giant Spreadsheet, to CI"); *see also id*., ¶¶ 72–73 ("CI continues to offer the G5|20 fund for sale in Canada," which relies on Wiesner's intellectual property or a derivative work of Wiesner's intellectual property); *and* ¶ 71 ("As part of the termination . . . CI licensed to the Nexus companies the right to market and use [Wiesner's] intellectual property and trading strategy anywhere outside of Canada in perpetuity for $1."). Berg claims that the Nexus Defendants and CI do not own Wiesner's intellectual property, and that once he "was terminated, they no longer continue[d] to have a license to use [his] intellectual property." *Id*., ¶ 65. The Second Amended Complaint contains six counts, all of which include allegations regarding Wiesner's intellectual property and the Nexus Defendants' and CI's use, or alleged misuse, of that property. *See* 75-1, Ex. 2.

Count I of CI's proposed crossclaim alleges that if CI is found liable on Berg's claims due to a finding "that Nexus did not own material portions of the Nexus Risk

Management Platform," then the Nexus Defendants breached Article IV sections 4.3(a) and 4.4 of the Asset Purchase Agreement.[2] Dkt. 58, Ex. 1, p. 3–4. In the alternative, Count II of CI's proposed crossclaim seeks contribution pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1, from the Nexus Defendants should CI be found liable on Berg's Illinois common law unjust enrichment count, "based on trade secret claims and not based on any copyright claims." *Id.*, p. 4–5. Now before the Court is CI's Motion For Leave To File Cross-Claim. Dkt. 58.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 13(g) ("Rule 13(g)"), "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." *Cutler v. Quality Terminal Servs., LLC*, No. 08-cv-6630, 2011 WL 98927, at *1 (N.D. Ill. Jan. 12, 2011) (quoting Fed. R. Civ. P. 13(g)). "Rule 13(g) does not impose any time limitations on the filing of cross claims." *Id.* Accordingly, after "the parties have filed their initial pleadings, any motion to amend those

---

[2] Section 4.3(a) states, "[neither] the execution and delivery of this Agreement or any other agreement or document to which the Vendor [Nexus Risk Management Inc.] is or will become a party as contemplated by this Agreement, the consummation of the transactions contemplated herein or therein nor compliance by the Vendor with any provisions hereof or thereof will . . . (iv) result in the creation or imposition of any encumbrance upon the Nexus Risk Platform." Dkt. 58, Ex. 1, p. 3–4; *see also* Dkt. 73, Ex. A, p. 7  Section 4.4 explains, "[t]he Vendor [Nexus Risk Management Inc.] has good, valid and marketable title to all the Nexus Risk Platform, with good and valid title, free and clear of all encumbrances." *Id.*

pleadings and file a cross-claim must be made pursuant to Federal Rule of Civil Procedure 15." *Tragarz v. Keene Corp.*, 980 F.2d 411, 431 (7th Cir. 1992).

Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") provides that leave to amend shall be freely given when justice so requires, but courts should consider the following factors when deciding whether or not to grant leave to amend: (i) undue delay or bad faith by the moving party; (ii) dilatory motive on the part of the movant; (iii) repeated failure by the movant to cure deficiencies by amendments previously allowed; (iv) undue prejudice to the opposing party; and (v) futility of the amendment. *See Cutler*, 2011 WL 98927, at *1 (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he trial court must determine if prejudice to the defendant outweighs the underlying policy of Rule 15 that a case be tried on the merits." *Il. Power Co. v. Figgie Int'l., Inc., "Automatic" Sprinkler Corp. of Am. Div.*, No. 89 C 4632, 1991 WL 3323, at *2 (N.D. Ill. Jan. 7, 1991). "The decision whether to allow an amendment to the pleadings rests within the sound discretion of the trial court." *Shapo v. Engle*, No. 98 C 7909, 2000 WL 198435, at *1 (N.D. Ill. Feb. 11, 2000).

## DISCUSSION

Berg and the Nexus Defendants contend that "CI's Motion for Leave to file its proposed Cross-Claim should be denied as it does not address transactions, occurrences, or factual or legal issues that are identical to the" Second Amended Complaint. Dkt. 69, p. 2. They further assert that CI's proposed crossclaim "seeks to resolve disputes solely related to the relationship between CI and the Nexus

Defendants" and that such resolution "will require an analysis of facts that are not relevant to [Berg's] claims." *Id*., p. 3. Berg and the Nexus Defendants also argue that the motion for leave to file the crossclaim should be denied: (i) because Count I of the crossclaim involves a dispute between two Canadian entities, over a Canadian contract, governed by Canadian law; and (ii) because CI cannot seek contribution from the Nexus Defendants under the Illinois Contribution Among Joint Tortfeasors Act. Dkt. 69, p. 3–6.

CI contends that Count I of the proposed crossclaim "arises out of the same transaction that is the subject of the Second Amended Complaint" and "Count I also relates to property that is the subject matter of the original action: the intellectual property that" Berg alleges gives rise to the trade secret and copyright infringement claims against CI and the Nexus Defendants. Dkt. 75, p. 4. CI also responds that United States federal courts frequently apply Canadian law, and that "the burden for U.S. courts in applying Canadian law is not noticeably different from the burden of applying another state's law." *Id*., p. 6, 8. Moreover, CI argues, that because "[u]njust enrichment claims are often founded in tort," it has "a statutory right under the plain wording of 740 ILCS 100/1 to pursue its contribution crossclaim (Count II) against the Nexus Defendants." *Id*., p. 8–9. Finally, CI asserts that granting the instant motion "will not prejudice or interfere with these proceedings progressing efficiently" because "[t]his case is in the early stages and discovery has just begun." Dkt. 58, ¶¶ 1–2.

The Court agrees with CI. According to the Asset Purchase Agreement, when CI and the Nexus Defendants terminated their relationship, the Nexus Defendants agreed to transfer the Nexus Risk Platform to CI. Dkt. 73, Ex. A, p. 2. The Second Amended Complaint alleges that "[a]s part of the termination of the relationship with CI, the Nexus companies and Charles Gilbert transferred [Wiesner's] intellectual property, including the Validation Tool, the Live Trading Sheet, and The Giant Spreadsheet, to CI." Dkt. 75-1, Ex. 2, ¶ 69. Berg also asserts that both CI and the Nexus Defendants "have and continue to reproduce, distribute, use, disclose and offer for sale" Wiesner's "intellectual property, including but not limited to The Giant Spread Sheet, the Live Trading Sheet, and the Validation Tool." *Id.*, ¶ 89; *see also* ¶ 73, 83, 93. These allegations, among others, demonstrate that Count I of the proposed crossclaim relates to the property that is the subject matter of the Second Amended Complaint. As to Count II, CI seeks contribution from the Nexus Defendants in the event that CI is found liable on Berg's unjust enrichment count—Count V of the Second Amended Complaint. Accordingly, Count II arises out of the transactions or occurrences that are the subject matter of the Second Amended Complaint. Thus, the requirements of Rule 13(g) have been satisfied. However, because Rule 13(g) does not impose time limitations on the filing of crossclaims, the Court must determine whether to grant the motion to amend the pleadings under Rule 15(a).

Neither Berg nor the Nexus Defendants assert that CI: (i) engaged in an unreasonable delay or acted in bad faith; (ii) had a dilatory motive; or (iii) repeatedly failed to cure deficiencies by amendments previously allowed. Nor does the Court believe that any of these circumstances exist in the instant matter. As to undue prejudice, Berg and the Nexus Defendants' argue that the motion should be denied because CI's proposed crossclaim involves a dispute between CI and the Nexus Defendants and resolution of that dispute "will require an analysis of facts that are not relevant to [Berg's] claims." Dkt. 69, p. 2–3. While Count I of the crossclaim will certainly require the Court to analyze additional facts that may or may not be relevant to all of Berg's claims, Count I is a breach of contract claim that involves intellectual property that Berg alleges belongs to Wiesner. The question of ownership of the intellectual property is thus relevant to both Berg's claims and Count I of CI's proposed crossclaim. Accordingly, this argument is unpersuasive.

Berg and the Nexus Defendants arguments that CI's motion should be denied because it involves a "dispute over a Canadian contract entered into between entirely Canadian parties" and because "CI is not entitled to contribution under the Illinois Contribution Among Joint Tortfearors Act," seem to suggest that leave should not be granted because the amendment would be futile. Dkt. 69, p. 1. The first argument is unconvincing because, as CI correctly argues, "federal courts are often compelled to apply foreign law." *Canadian Pac. Express & Transp. Ltd. v. Baretz*, No. 96 C 844, 1996 WL 515166, at *4 (N.D. Ill. Sept. 6, 1996) ("That we might be required to apply

11

Canadian Law . . . does not counsel otherwise for the federal courts are often compelled to apply foreign law.") (citing *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345 (8th Cir. 1983); *see generally, Denison Mines, Ltd. v. Mich. Chem. Corp.*, 469 F.2d 1301 (7th Cir. 1972) (applying Ontario contract law). The second argument is also unavailing because "[i]nfringement of intellectual property rights sounds in tort," s*ee Habitat Wallpaper and Blinds, Inc., v. K.T. Scott Ltd. P'ship*, 807 F. Supp. 470, 473 (N.D. Ill. 1992), and Berg's unjust enrichment count—Count V of the Second Amended Complaint—is based on the alleged misappropriation of Wiesner's intellectual property. Thus, because the standards set out by Rule 13(g) and Rule 15(a) have been satisfied, CI's Motion For Leave To File Cross-Claim, Dkt. 58, is granted.

## CONCLUSION

For the aforementioned reasons, CI's Motion For Leave To File Cross-Claim, Dkt. 58, is granted.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Date: 9/23/2016